UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURICE GRAYTON,<br><br>         Plaintiff,<br><br>v.<br><br>SAN DIEGO COUNTY CREDIT UNION, DOES 1 through 5,<br><br>         Defendants. | Case No.: 18-cv-2254-WQH-WVG<br><br>**ORDER** |

HAYES, Judge:

  The matter before the Court is the Motion to Compel Arbitration (ECF No. 5) filed by Defendant San Diego County Credit Union (SDCCU).

## I. BACKGROUND

  On July 5, 2018, Plaintiff Maurice Grayton (Plaintiff) filed a Complaint in the Superior Court of California for the County of San Diego, case number 37-02018-00033141-CL-PO-CTL, against SDCCU. Plaintiff brings claims for breach of contract, unjust enrichment, fraud, "interference of prospective business relationship," intentional infliction of emotional distress, and negligence. (ECF No. 1-2 at 3). Plaintiff alleges he "entered into a[n] unsecured credit transaction" with SDCCU, and that SDCCU "relied on evidence unsupported by material facts to set a rate higher than Plaintiff['s] secure card." *Id.* Plaintiff alleges that SDCCU "refuse[d] to reset term[s]/cond[i]t[io]ns" and "violated Title 15 USC § 1681, Fair Accurate Credit Transaction Act of 2003." *Id.* Plaintiff seeks

1

$10,000 in damages. *Id.* In an amended complaint dated September 11, 2018, Plaintiff seeks $7,500 in damages and alleges that he "tender[ed] a security of $1200.00 on a secured account on the amount of $3,500.00," "depleted $3,200.00 of the $3,500.00, and demanded to close the account." *Id.* at 23. Plaintiff alleges that SDCCU "refused the request for months, however, upon another branch[']s action the account was closed, but the tender was less than the [Plaintiff's] security ($928.00)." *Id.*

On September 27, 2018, SDCCU removed Plaintiff's claims to this Court based on federal question jurisdiction. (ECF No. 1).

On October 4, 2018, SDCCU filed the Motion to Compel Arbitration supported by a declaration and related exhibits. (ECF No. 5).

On November 14, 2018, Plaintiff filed a Response in Opposition to the Motion to Compel Arbitration, asserting that SDCCU has failed to satisfy requirements to move to compel arbitration and that the issues in this case are not within the scope of the agreement. (ECF No. 7 at 1).

On October 15, 2018, SDCCU filed a Reply in support of the Motion, asserting it has met all applicable requirements to move to compel arbitration and that the issues in this case are within the scope of the agreement. (ECF No. 10).

## II. FACTUAL BACKGROUND

Defendants provide the declaration of Patrick Cosgrove, Executive Vice President, Chief Lending Officer, of SDCCU. (Cosgrove Decl. ¶ 1, ECF No. 5-2). Cosgrove's declaration states,

> 4. On February 8, 2017, Plaintiff signed a Credit Card Pledge of Shares/Deposits relating to an application for a Secured Visa Classic credit card (the "Credit Application") . . . .
> 5. It is SDCCU's custom and practice to provide members with a copy of the Share Secured Visa Classic Consumer Credit Card Agreement whenever they apply for such a card. Plaintiff chose to apply for a credit card with SDCCU, and he would have had as much time as he wanted to review the Credit Agreement before applying for the credit card.
> 6. When Plaintiff applied for the credit card, SDCCU did not promise him a specific interest rate, nor could it, as SDCCU had to review his application

and pull his credit history. Plaintiff was approved for the credit card, which he was authorized to use outside the state and the country.

7. On or about December 16, 2016, Plaintiff signed a "Membership Application and Account Agreement" (the "Membership Application"), in which he acknowledged that he had "received a copy and agree[d] to be bound by" SDCCU's current Terms and Conditions. . . .

8. SDCCU's Terms and Conditions include an agreement to Arbitrate . . . .

*Id.* ¶¶ 4–8. The Credit Application signed by Plaintiff, a "copy of the Share Secured Visa Classic Consumer Credit Card Agreement that Plaintiff would have received when he applied for his credit card with SDCCU" (the Credit Card Agreement), the Membership Application signed by Plaintiff, and a copy of SDCCU's Terms and Conditions are attached to the Cosgrove declaration. (Exhs. A–D to Cosgrove Decl., ECF No. 5-2).

The Credit Application states, "You understand that this document is governed by the terms of the Consumer Credit Card Agreement and Disclosure, and is herein incorporated by reference," and shows Plaintiff's signature, dated February 5, 2018. (Ex. A to Cosgrove Decl., ECF No. 5-2 at 6). The fifth page of the Credit Card Agreement states,

30. ARBITRATION - You and we agree that any and all claims arising from or relating to this Agreement and/or any loan or service provided by us shall be subject to binding arbitration under the Federal Arbitration Act ("FAA"). Subject to the exclusions specifically identified below, this includes all claims, including those based on contract, tort, equity, statute, or otherwise, as well as claims regarding the scope and enforceability of this provision. It includes all claims by or against you, us, and/or any others providing or receiving any loan or service related to this Agreement. . . .

A single Arbitrator shall decide all claims subject to this provision and shall render a final, written decision. You may choose the American Arbitration Association ("AAA"), Judicial Arbitration and Mediation Service ("JAMS"), or other similar arbitration service provider acceptable to us to administer the arbitration. Consistent with the FAA, the appropriate AAA rules, JAMS rules, or other service provider rules shall apply, as determined by the Arbitrator. For AAA and JAMS, these rules are found at www.adr.org and www.jamsadr.com. Unless otherwise agreed by the parties, the arbitration shall take place within San Diego County.

3

18-cv-2254-WQH-WVG

> Each party to the arbitration shall pay his, her, or its own costs of arbitration. If you cannot afford the arbitration costs, you may apply for a waiver under the relevant arbitration rules. If the arbitration service provider does not waive your costs of arbitration, we will consider paying all or a portion or your costs of arbitration if you can establish that You cannot afford them. . . .

(Ex. B to Cosgrove Decl., ECF No. 5-2 at 11). The Membership Application states, "I/We acknowledge that I/we have received a copy and agree to be bound by the "Account Disclosures and Agreement" booklet (which includes current Terms and Conditions, notices and disclosures)." (Ex. C to Cosgrove Decl., ECF No. 5-2 at 13). The Membership Application shows Plaintiff's occupation as a Marine for the U.S. Military, and shows Plaintiff's signature, dated December 16, 2016. *Id.* The twenty-seventh page of the Terms and Conditions states,

> Unless you are an active duty member of the armed forces or are on active Guard or Reserve duty, or your account otherwise falls under the protections of the [Military Lending Act] or is otherwise exempt from arbitration under federal law, you agree that any and all claims arising from or relating to this Agreement or any service provided by SDCCU to you shall be subject to binding arbitration under the Federal Arbitration Act ("FAA"). This includes claims based on contract, tort, equity, statute, or otherwise, as well as claims regarding the scope and enforceability of this provision. It includes all claims by or against you, co-members, co-borrowers, SDCCU, and others providing or receiving any product or service related to this Agreement or your account with SDCCU.
> A single Arbitrator shall decide all claims and shall render a final, written decision. You may choose the American Arbitration Association ("AAA"), Judicial Arbitration and Mediation Service ("JAMS"), or other similar arbitration service provider acceptable to SDCCU to administer the arbitration. Consistent with the FAA, the appropriate AAA rules, JAMS rules, or other service provider rules shall apply, as determined by the Arbitrator. For AAA and JAMS, these rules are found at www.adr.org and www.jamsadr.com.
> Unless otherwise agreed by the parties, the arbitration shall take place in San Diego, California.
> Each party to the arbitration shall pay his, her, or its own costs of arbitration. If you cannot afford your arbitration costs, you may apply for a waiver under the relevant rules. . . .

4

18-cv-2254-WQH-WVG

(Ex. D to Cosgrove Decl., ECF No. 5-2 at 20).

## III. DISCUSSION

The Federal Arbitration Act (FAA) provides at § 2:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

The FAA provides at § 4:

> A party aggrieved by the alleged failure . . . to arbitrate under a written agreement . . . may petition any United States district court which, save for such agreement, would have jurisdiction . . . for an order directing that such arbitration proceed . . . .

The FAA provides at § 3:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court . . . upon being satisfied that the issue . . . is referable to arbitration . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had . . . .

The FAA "reflect[s] both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal citations and quotation marks omitted). "The basic role for courts under the FAA is to determine (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (en banc) (internal quotation marks omitted). "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "[T]he party seeking to compel arbitration . . . bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d

1279, 1283 (9th Cir.), cert. denied, 138 S. Ct. 203 (2017) (quotation omitted). If the moving party satisfies its burden, "the burden shifts to the party opposing the motion to compel, who may present any challenges to the enforcement of the agreement and evidence in support of those challenges." *Baker v. Italian Maple Holdings, LLC*, 220 Cal. Rptr. 3d 887, 894 (Ct. App. 2017).

### A. Validity

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Norcia*, 845 F.3d at 1283 (quoting *AT&T Techs., Inc. v. Commc'n Workers,* 475 U.S. 643, 648 (1986)). A court "'appl[ies] ordinary state-law principles that govern the formation of contracts' to decide whether an agreement to arbitrate exists." *Id.* (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). "[T]he moving party" has the "burden to provide evidence of the existence of an agreement to arbitrate," and "it is generally sufficient for the party to present a copy of the contract to the court." *Baker*, 220 Cal. Rptr. 3d at 894. "In keeping with California's strong public policy in favor of arbitration, any doubts regarding the validity of an arbitration agreement are resolved in favor of arbitration." *Samaniego v. Empire Today LLC*, 140 Cal. Rptr. 3d 492, 497 (Ct. App. 2012).

Plaintiff asserts that SDCCU has not "allege[d the] existence of [an] agreement to arbitrate." (ECF No. 7 at 3). SDCCU asserts that it proved an arbitration agreement exists. (ECF No. 10 at 5). SDCCU has provided copies of the arbitration agreements. *See* ECF No. 5-2 at 6, 11, 13, 20. The Court finds that SDCCU has carried the burden to show that a valid arbitration agreement exists.

Plaintiff asserts that "the case is about Plaintiff's deposit of money, the closing of the account and the unlawful taking of funds." (ECF No. 7 at 1). Plaintiff asserts that "[t]he dispute between the parties is not within the scope of the arbitration provision." *Id.* SDCCU asserts that Plaintiff's claims are within the scope of the arbitration agreement. (ECF No. 10 at 6). The Court finds that Plaintiff's claims relate to arrangements for a credit card and an account with SDCCU. The Court concludes that Plaintiff's claims

"aris[e] from or relat[e] to this Agreement and/or any loan or service provided by [SDCCU]," *see* Ex. B to Cosgrove Decl., ECF No. 5-2 at 11, and "arising from or relating to this Agreement or any service provided by SDCCU," *see* Ex. D to Cosgrove Decl., ECF No. 5-2 at 20. There is no evidence in the record to show that Plaintiff is "an *active duty* member of the armed forces or . . . active Guard or Reserve duty, or . . . otherwise falls under the protections of the [Military Lending Act]." *See* Ex. D to Cosgrove Decl., ECF No. 5-2 at 20) (emphasis added); *see also Samaniego*, 140 Cal. Rptr. 3d 492, 497 ("[A]ny doubts regarding the validity of an arbitration agreement are resolved in favor of arbitration."). The Court concludes that Plaintiff's claims are within the scope of the Credit Application, the Credit Card Agreement, the Membership Application, and the Terms and Conditions.

### B. Enforceability

If the movant carries its burden, "the burden shifts to the party opposing the motion to compel, who may present any challenges to the enforcement of the agreement and evidence in support of those challenges." *Baker*, 220 Cal. Rptr. 3d at 894. Plaintiff asserts that "the parties have not mediated as [the] contract requires before arbitration." (ECF No. 7 at 3). The record contains no evidence that the agreements required the parties to mediate as a prerequisite to arbitration. The Court concludes that Plaintiff has not carried the burden to show that mediation provides grounds to deny the motion to compel arbitration in this case. *Cf. Templeton Dev. Corp. v. Superior Court*, 51 Cal. Rptr. 3d 19, 27 (2006) (concluding parties could not require arbitration when the agreement stated "that any dispute . . . 'shall be submitted to mediation . . . before resorting to Arbitration or litigation . . . . [M]ediation is an express condition precedent to the hearing of any arbitration. . . .'" and the "record support[ed] the trial court's finding, not disputed by the parties, that petitioners failed to respond to [a] request for mediation when given the opportunity."); *Unite Here Local 30 v. Volume Servs., Inc.*, 723 F. App'x 403 (9th Cir. 2018) (affirming district court's determination that the parties' mediation of union member's termination precluded arbitration).

Plaintiff asserts that SDCCU has not "ple[]d and prove[d] [a] request or demand for arbitration," and that Cal. Code Civ. P. § 1281.2 "requires a party filing a petition to compel arbitration to plead and prove that it made a request or demand to the other party or parties for arbitration of the controversy pursuant to and under the terms of their written arbitration agreement." (ECF No. 7 at 3) (citing *Mansouri v. Superior Court*, 104 Cal. Rptr. 3d 824, 830 (Ct. App. 2010) (citing Cal. Code Civ. P. § 1281.2)). SDCCU asserts that it was not required to comply with § 1281.2 or otherwise to make a written demand for arbitration prior to filing the motion to compel. (ECF No. 10 at 7). The FAA provides that "[a]ny application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions." 9 U.S.C. § 6. Where applicable, California law "requires a petition to compel arbitration to . . . plead[] and pro[ve] . . . a request or demand by one party to the other party or parties for arbitration of such controversy." *Mansouri*, 104 Cal. Rptr. 3d at 830 (citing Cal. Code Civ. P. § 1281.2). The Court concludes that SDCCU was not required to make any additional requests for arbitration prior to filing the Motion. The Court concludes that Plaintiff has not carried the burden to show that California law provides grounds to deny the motion to compel arbitration in this case.

Plaintiff asserts that arbitration cannot be compelled if "the right to compel arbitration . . . has been waived." (ECF No. 7 at 1). SDCCU asserts that it knew of the right to compel arbitration and did not act inconsistently with that right or cause prejudice to Plaintiff. (ECF No. 10 at 7). "The right to arbitration, like other contractual rights, can be waived"; however, "waiver of the right to arbitration is disfavored." *Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016) (citations omitted). "[A]ny party arguing waiver of arbitration bears a heavy burden of proof. . . . [to] demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Id.* (quotations omitted). The record contains no evidence showing that SDCCU acted inconsistently with the right to compel arbitration. The record contains no evidence showing prejudice to

Plaintiff. The Court concludes that Plaintiff has not carried the "heavy burden" to show that waiver provides grounds to deny the motion to compel arbitration in this case. *See id.*

The Court concludes that Plaintiff has not carried his burden to "present any challenges to the enforcement of the agreement and evidence in support of those challenges." *See Baker*, 220 Cal. Rptr. 3d at 894. The Court concludes that a valid arbitration agreement exists and that Plaintiff's claims are within the scope of the agreement.

### IV. CONCLUSION

IT IS HEREBY ORDERED that the Motion to Compel Arbitration (ECF No. 5) filed by Defendant San Diego County Credit Union is GRANTED. Pursuant to 9 U.S.C. § 4, the parties are directed to proceed to arbitration in accordance with the terms of the arbitration agreement. Pursuant to 9 U.S.C. § 3, Plaintiff's claims are STAYED in favor of arbitration.

Dated: March 14, 2019

Hon. William Q. Hayes
United States District Court